IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CEDRIC JONES, SR.,          )
                                 )
        Plaintiff,           )
                                 )
v.                              )       No. 3:14-cv-01229
                                 )
CHERYL A. BLACKBURN *et al.*,    )       Judge Trauger
                                 )
        Defendants.      )

## MEMORANDUM OPINION

Plaintiff Cedric Jones, Sr. is a state prisoner presently incarcerated at the West Tennessee State Penitentiary in Henning, Tennessee. He originally filed this action in the United States District Court for the Western District of Tennessee. That court transferred the matter to this court as the appropriate venue, because nearly all of the defendants are located in Nashville, within the Middle District of Tennessee.

The plaintiff has been granted leave to proceed *in forma pauperis*. The plaintiff was also granted leave to amend his complaint. His amended complaint is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I.      The PLRA Standard

Under the PLRA, the court must conduct an initial review of any civil complaint filed *in forma pauperis*, 28 U.S.C. § 1915(e)(2), or brought by a prisoner-plaintiff against government entities or officials, 28 U.S.C. § 1915A. Upon conducting this review, the court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A. The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). *Pro se* status, however, does not exempt a plaintiff from compliance with relevant rules of procedural and substantive law. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) ("Neither [the Supreme] Court nor other courts . . . have been willing to abrogate basic pleading essentials in *pro se* suits."); *see also Brown v. Matauszak*, 415 F. App'x 608, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating, "a court cannot create a claim which [a plaintiff] has not spelled out in his pleading" (citation and internal quotation marks omitted; alteration in original)).

II.     **Factual Allegations**

In his *Amended "Complete Complaint"* (ECF Nos. 18, 18-1, 18-3), the plaintiff names as defendants Davidson County Criminal Court Judge Cheryl A. Blackburn, in both her official and individual capacities; Chris B. Craft, Shelby County Criminal Court Judge and Chair of the Tennessee Board of Judicial Conduct, in both his official and individual capacities; Detective Robert Carrigan with the Metro Nashville Police Department; "Jane Doe 'Rena,'" a mental health practitioner with Correct Care Solutions, the entity that provides medical care to inmates in the custody of the Davidson County Sheriff's Office; and Davidson County. Although the case caption includes the designation "*et al.*" in the list of defendants, the court declines to speculate as to the identity of any other individual or entity the plaintiff may intend to sue.

The plaintiff alleges generally that defendant Blackburn acted "out of her jurisdiction in reckless disregard of the law and in conspiracy with others." (ECF No. 18, at 2.) His claims against Judge Blackburn apparently arise from his dissatisfaction with her decisions in the ongoing criminal proceedings

against the plaintiff in Judge Blackburn's court, including Judge Blackburn's refusal to recuse herself and her failure to rule on the plaintiff's pending motions for a new trial and for change of venue. The plaintiff enumerates a number of purported errors by the trial court, the prosecutor, and his defense attorneys during his criminal trial, and asserts that Judge Blackburn's rulings violated the plaintiff's due-process right to a fair trial. The plaintiff also alleges that it is improper for Blackburn to continue to preside over the criminal case against him after he had filed a civil lawsuit against her in federal court.

The plaintiff "believes" that defendant Craft, in his capacity as a member of the Tennessee Board of Judicial Conduct, is "acting in concert with defendant Cheryl A. Blackburn and conspiring against him by refusing to discipline, sanction or reprimand Judge Blackburn for official misconduct, official oppression, perjury, and fraud upon the court." (ECF No. 18, at 2.). The plaintiff states that he filed a complaint against Blackburn with the Tennessee Board of Judicial Conduct, but that body rejected the complaint, stating that it did not "rise to the level that would justify further action." (ECF No. 18-1, at 4.) The court presumes that the action against defendant Craft is based on the Tennessee Board of Judicial Conduct's action (or failure to act) on the plaintiff's complaint against defendant Blackburn.

The plaintiff asserts that detective Robert Carrigan "committed official misconduct against him . . . and has interfered with his insurance lawsuit filed against State Farm Insurance." (*Id.* at 4.) The plaintiff alleges that defendant Carrigan contacted State Farm and "assisted them in denying him due process by failing to investigate his insurance claim properly, causing him irreparable injury." (*Id.*).

He asserts that "Defendant [JANE DOE] 'RENA' . . . and Defendant Blackburn act[ed] in concert with [defense] counsel Jack Byrd and detective Robert Carrigan for retaliation under 42 U.S.C. § 1983." (*Id.* at 6.) More specifically, the plaintiff alleges that, immediately after his trial concluded in March 2013, "Rena" met with him to inquire about his emotional status. The plaintiff informed Rena that he was fine emotionally and prepared for whatever the outcome of his trial would be. Although, the plaintiff claims, there was nothing in his words or behavior that gave rise to a reasonable belief that he might be suicidal, he was suddenly seized by a jail officer, stripped of all his clothing, and locked in an isolation cell. The plaintiff asked Rena why this was happening, but she simply walked away without answering. The plaintiff alleges that he was kept in the "strip cell where he was forced to sleep on a cold concrete slab with just a wool blanket and no other clothes for 24 hours." (ECF No. 18-1, at 5.)

After 24 hours, he was moved from the strip cell to another cell in the same pod/unit. The plaintiff states that "Rena" made the decision to move him after speaking with his brother. The plaintiff makes no allegations concerning the conditions in that cell. "After about a week," the plaintiff was moved to a third cell in the same pod. (*Id.*at 6.) This cell, however, smelled horribly of human fecal matter and urine and had no running water. The plaintiff requested and was given cleaning supplies, but the smell returned even after cleaning. The plaintiff was told that a former occupant of that cell had urinated constantly on the floor and smeared feces into the cracks and vents of the cell, so the smell was impossible to remove. The plaintiff was told by a Mental Health staff person that he was placed in that unit because "she need[ed] space for other inmates coming into that pod." (*Id.* at 6.) The plaintiff remained in that cell for approximately a week before being returned to a regular pod.

The plaintiff believes that Rena's decision to place him on suicide watch was based on

> a harassing email sent by detective Robert Carrigan through 'hearsay' of his counsel Jack Byrd, and that detective Robert Carrigan (with MNPD) main motive was to harass him, cause him irreparable harm, deliberate indifference, deny him access to the court and violate his 8th amendment (cruel and unusual punishment) under the constitution of the United States.

(*Id.*) The plaintiff references "Exhibit L" in support of this allegation. Exhibit L is a Mental Health Progress Note by Correct Care Solutions staff at the Davidson County Jail, which indicates that the plaintiff was placed on level II "suicide precaution protocol" after his conviction "[d]ue to increased risk factors, past SA [suicide attempt], shocking and serious nature of crime, and drastic change in I/ms [inmate's] presentation." (ECF No. 18-12, at 2.) The mental health note was signed by R. Reynolds, LMSW. The note includes a reference to a statement from the prosecuting attorney in the plaintiff's criminal case that was based on her conversation with the plaintiff's defense counsel, in which he informed her that the plaintiff "had been acting strange and increasingly more sullen and depressed in the last few days leading up to his trial." (*Id.*) The note also referred to an email from investigator Robert Carrigan stating that the plaintiff had written a suicide letter to his family prior to his arrest. (*Id.* at 1.)

The plaintiff states that he filed two grievances against the jail after he was finally released from suicide precaution protocol, which were not sustained.

The plaintiff seeks damages from all defendants in the amount of $5 million. He also seeks injunctive relief in various forms, including that this court issue an order directing defendant Blackburn to

recuse herself "sua sponte" from presiding over the plaintiff's criminal case and to answer the plaintiff's "motion challenging her jurisdiction with a complete and 'non-evasive' answer." (ECF No. 18-1, at 7.)[1]

## III.    Discussion

The plaintiff seeks to bring suit under 42 U.S.C. § 1983 to vindicate alleged violations of his federal constitutional rights. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

### A.    Claims Against Judge Blackburn

The court notes, as an initial matter, that this is at least the fourth federal lawsuit the plaintiff has filed against Judge Blackburn arising from generally the same events. *See, e.g.*, *Jones v. Goldtrap* et al., No. 3:12-cv-01338 (M.D. Tenn.) (complaint filed, fee paid, Dec. 31, 2012; dismissed on February 21, 2014 pursuant to order accepting and approving magistrate judge's report and recommendation that defendants' motions to dismiss be granted; appeal pending); *Jones v. Blackburn*, No. 3:13-cv-00073 (M.D. Tenn.) (filed *in forma pauperis* on January 30, 2013; dismissed on March 21, 2013 without prejudice, prior to service, pursuant to the plaintiff's notice of voluntary dismissal); *Jones v. Blackburn*, No. 3:13-cv-00248) (M.D. Tenn.) (filed *in forma pauperis* on March 19, 2013; dismissed on initial review on March 25, 2013). Insofar as the plaintiff's claims against defendant Blackburn in this lawsuit reiterate claims raised in any prior lawsuit that were dismissed on the merits, such claims are barred by the doctrine of *res judicata*. *See Montana v. United States*, 440 U.S. 147, 153 (1979) ("[A] final judgment on the merits bars further claims by parties or their privies based on the same cause of action." (citations omitted)).

---

[1] The plaintiff purports to seek "habeas corpus relief." (ECF No. 18-1, at 7.) Judge James Todd in the Western District already denied the plaintiff's Petition for Habeas Corpus filed in this case and notified the plaintiff that a habeas petition cannot be combined with a civil suit under 42 U.S.C. § 1983. (*See* Order, ECF No. 25, at 3.)

Second, insofar as the plaintiff's claims concern events that took place in 2011 and 2012, they are barred by the one-year statute of limitations that pertains to § 1983 actions in Tennessee. *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986).

To the extent they are not otherwise barred by *res judicata* or the statute of limitations, the plaintiff's claims against Judge Blackburn under § 1983 seeking monetary damages are barred because the judge is absolutely immune from suit for damages. *See Mireles v. Waco*, 502 U.S. 9, 10–11 (1991) (reconfirming that a judge performing judicial functions is absolutely immune from suit seeking monetary damages even if acting maliciously, erroneously, corruptly or in excess of jurisdiction); *Collyer v. Darling*, 98 F.3d 211, 221 (6th Cir. 1996) (citing *Mireles*, 502 U.S. at 9). This immunity applies to actions brought under 42 U.S.C. § 1983 to recover for alleged deprivation of civil rights. *Pierson v. Ray*, 386 U.S. 547, 554–55 (1967).

Absolute judicial immunity may be overcome in only two instances. First, a judge is not immune from liability for non-judicial actions, *i.e.*, actions not taken in the judge's judicial capacity. *Mireles*, 502 U.S. at 11. Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Id.* at 12.

The instant complaint, like the plaintiff's previous complaints, fails to implicate either of the exceptions to judicial immunity. The plaintiff's challenge to the proceedings involves the performance of judicial duties by Judge Blackburn. Accordingly, defendant Judge Blackburn is absolutely immune from suit for such conduct and the claim against her must be dismissed on that basis.

Besides monetary damages, the plaintiff also seeks injunctive relief against Judge Blackburn, in the form of, for example, an order directing Judge Blackburn to recuse herself from presiding over the ongoing criminal proceedings against the plaintiff and to answer the plaintiff's motion challenging her jurisdiction, and an order that the plaintiff be granted a new criminal trial in a new venue and that he be released from custody pending the new trial. (*See* ECF No. 18-1, at 7.) As was the case in the plaintiff's prior suits for injunctive relief against defendant Blackburn, the plaintiff's claims in this case are barred by the *Younger* abstention doctrine. This doctrine, first articulated in *Younger v. Harris*, 401 U.S. 37 (1971), is grounded in the concept of comity between federal and state courts and recognizes the principles of federalism that our legal system is built upon, requiring a federal court to abstain from a case when a

state court still retains jurisdiction over a related state case and that state court provides an adequate remedy. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987); *Younger*, 401 U.S. at 43-44. The Sixth Circuit applies *Younger* abstention when three considerations are satisfied: (1) the underlying proceedings constitute an ongoing state judicial proceeding, (2) the proceedings implicate important state interests, and (3) there is an adequate opportunity in the state proceedings to raise a constitutional challenge. *Tindall v. Wayne Cnty. Friend of the Court*, 269 F.3d 533, 538 (6th Cir. 2001); *see Parker v. Ky. Bd. of Dentistry*, 818 F.2d 504, 508 (6th Cir. 1987).

These three considerations are clearly met here. First, the plaintiff's prayers for relief, such as asking that Judge Blackburn recuse herself and that the plaintiff be released pending a new trial, indicate that the criminal proceedings against him remained ongoing at the time the complaint was filed.[2] Second, there is clearly an important state interest at stake: the execution of state criminal laws. Finally, the plaintiff has ample opportunity to raise his constitutional claims before the state courts. For the federal court to enjoin the state court presiding over the plaintiff's criminal proceedings would completely throw the notions of comity and federalism to the wind. The court therefore concludes that it should abstain from adjudicating the plaintiff's claims for injunctive relief against defendant Blackburn under *Younger*.

### B.    Claims Against Defendant Chris Craft

The plaintiff's claims against defendant Craft are based entirely on Craft's role as a member of the Tennessee Board of Judicial Conduct, which dismissed the plaintiff's complaint to the Board about Blackburn's conduct. The court finds that Craft's participation in the dismissal of an administrative investigation does not implicate a fundamental right of the plaintiff's and does not give rise to a claim under § 1983. Likewise, the plaintiff's speculation that Craft was in a conspiracy with Blackburn is just that: speculation. The complaint fails to state a colorable claim against Craft under § 1983.

### C.    Claims Against Defendant Robert Carrigan

The plaintiff asserts, without providing any factual support, that defendant Carrigan "committed official misconduct" by interfering in the plaintiff's civil lawsuit against State Farm Insurance by "assist[ing] [State Farm] in denying him due process by failing to investigate his insurance claim properly." (ECF No.

---

[2] "[I]f a state proceeding is pending at the time the action is filed in federal court, the first criteria for Younger abstention is satisfied." *Fed. Exp. Corp. v. Tenn. Pub. Serv. Comm'n*, 925 F.2d 962, 969 (6th Cir. 1991).

18, at 4.) The plaintiff also takes issue with Carrigan for his having sent an email to mental health services at the Davidson County Jail stating that the plaintiff had written a suicide letter to his family prior to his arrest.

The allegation that Carrigan acted in concert with State Farm Insurance is conclusory and unsupported and therefore does not state a colorable claim under § 1983. The allegation that Carrigan's email to mental health services was intended to harass the plaintiff is likewise unsupported and does not contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).. The claims against Carrigan will therefore be dismissed for failure to state a claim.

D.      **Claims Against "Rena" and Davidson County**

The plaintiff's claim against Rena appears to be based on the plaintiff's conclusion that it was her decision to place him on suicide watch. The claims against Davidson County are apparently based on the purportedly cruel and unusual conditions of the plaintiff's confinement while he was on suicide watch.

There is no constitutional right to avoid being placed on suicide watch. *Cf. Jones v. Lee*, No. 2:09-CV-11283, 2012 WL 683362, at *4 (E.D. Mich. 2012) ("Temporary placement on suicide watch, even when not necessary, does not implicate a liberty interest protected by the Due Process Clause nor does it amount to cruel and unusual punishment under the Eighth Amendment.") (citing *Sheldon v. Smith Cnty. Jail Med. Clinic*, No. 6:08cv68, 2010 WL 1658217, at *4 (E.D. Tex. Apr. 22, 2010); *Marshall v. Burden*, No. 5:09CV00128, 2010 WL 670079, at *4–5 (E.D. Ark. Feb. 22, 2010); *Starks v. Couch*, No. 08-cv-407, 2009 WL 331357, at *2 (S.D. Ill. Feb. 11, 2009); *Reynolds v. Mattson*, No. 2:07-CV-59, 2008 WL 2704750, at *1 (W.D. Mich. July 9, 2008); *Cherer v. Frazier*, No. 2:06-cv-00502, 2007 WL 2406844, at *5–6 (D. Nev. Aug. 16, 2007).

In *Reynolds v. Mattson*, a prisoner-plaintiff argued, like the plaintiff here, that the defendants subjected him to cruel and unusual punishment by placing him on suicide watch. The plaintiff claimed that he was handcuffed and taken to an observation room, which had been stripped of everything but a mattress. He alleged that he was not allowed sheets, blankets, pillows, pillow cases or towels, and was not allowed clothing except for underwear and a suicide prevention gown. In evaluating Reynolds' *pro se* Eighth Amendment claim brought pursuant to 42 U.S.C. § 1983, the court concluded that

> While Plaintiff obviously found these circumstances uncomfortable, they do not suggest that Plaintiff was subjected to the unnecessary and wanton infliction of pain, even at a *de minimis* level, that would support an Eighth Amendment violation. Plaintiff's placement and treatment in the suicide observation cell does not amount to cruel and unusual punishment, even if such actions were not for a legitimate purpose.

2008 WL 2704750, at *1 (citing *Brown v. Caruso*, No. 2:07-CV-140, 2008 WL 299030, at *4 (W.D. Mich. Feb. 1, 2008) (stating that "Plaintiff's claim that he was placed in suicide watch does not rise to the level of an Eighth Amendment violation"); *Skinner v. Reed*, No. 07-4160-CV-C-NKL, 2008 WL 141669, at *2 (W.D. Mo. Jan. 11, 2008) ("Moreover, plaintiff's claims regarding assignment to a suicide cell fail to state a claim under the Eighth Amendment. Conditions are not cruel and unusual merely because they are harsh or uncomfortable.")).

Here, the plaintiff alleges that he was placed on suicide watch for 24 hours, during which he was required to sleep naked on a concrete pad with just a wool blanket for cover. These allegations do not rise to the level of a due-process or Eighth Amendment violation. The plaintiff further alleges that he was on some type of step-down watch for another approximately 2 weeks, approximately 1 week of which were spent in a cell that reeked of unpleasant odors. The plaintiff does not allege that the cell was actually unclean or that he became ill or suffered any adverse consequences as a result of having to live with the bad odor for approximately a week. Again, although the circumstances as described by the plaintiff were undoubtedly unpleasant, he has not established that he was subjected to conditions that violated the Eighth Amendment. Furthermore, because there is no liberty interest in assignment to any particular prison, or housing unit within a prison, the plaintiff has no due-process claim for being placed on suicide watch or precautionary watch.

He therefore fails to state a claim against either Rena or Davidson County.

## IV.     Conclusion

For the reasons set forth herein, the plaintiff's complaint will be dismissed in its entirety. The claims against defendant Blackburn for injunctive relief will be dismissed without prejudice, and the remaining claims will be dismissed with prejudice. An appropriate order is filed herewith.

Aleta A. Trauger
United States District Judge